# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**PAUL C. JONES**                                                                    **CIVIL ACTION**

**VERSUS**                                                                             **NO. 24-178-JWD-RLB**

**EASTERN LOUISIANA MENTAL**
**HEALTH SYS., ET AL.**

**NOTICE**

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to its recommendations, proposed findings of fact, and conclusions of law. Failure to file written objections to the recommendations, proposed findings, and conclusions, within fourteen (14) days after being served, will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on May 20, 2026.

_____

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

1

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

PAUL C. JONES                                      CIVIL ACTION

VERSUS                                             NO. 24-178-JWD-RLB

EASTERN LOUISIANA MENTAL
HEALTH SYS., ET AL.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is a Motion for Summary Judgment (the "MSJ") filed by Turn Key Health Clinic, LLC, and Joyce Brown, NP (the "Defendants"). (R. Doc. 53). It is unopposed.

I.      **Background**

On March 1, 2024, Plaintiff filed suit in this Court against Defendants and many others[1] regarding eye damage he suffered when he was attacked by another inmate while in the custody of East Baton Rouge Parish Prison ("EBRP"). (R. Doc. 1). Plaintiff amended his complaint on February 26, 2025, noting he was bringing 14th and 8th Amendment 42 U.S.C. § 1983 claims against Defendants, the original defendants, and an assortment of additional defendants for their alleged deliberate indifference to Plaintiff's medical needs. (R. Doc. 41).

Plaintiff alleges that, during a retinal detachment surgery on April 6, 2022, Stephen Breaud, M.D., ("Dr. Breaud") placed a silicone oil bubble (the "Oil Bubble") in Plaintiff's right eye. According to Plaintiff, the Oil Bubble was set to be removed on November 4, 2022, but, when he was incarcerated at EBRP on October 24, 2022, the removal (the "Removal Surgery") did not occur. Plaintiff alleges he informed many Turn Key Health Clinic, LLC, ("Turn Key")

---

[1] The defendants other than the current Defendants were as follows: Louisiana Department of Health, Eastern Louisiana Mental Health Systems, Tunsha Harris, Richard Bethley, Pamela Scott, Laura Lott, John Roberts III, Rebekah Gee, State of Louisiana, Louisiana Office of Risk Management, Bureau of Protective Services, Paula Jones, Robert Kelly, Chris Braggs, Melvin Clouds, Jon Echols, and Jordan Robinson.

nurses that he needed the Removal Surgery, but they took no action due to their deliberate indifference. Thus, Plaintiff claims that, when another inmate attacked him in January and March of 2023, he suffered more eye damage than he would have if the Removal Surgery had occurred sooner. Plaintiff's original and amended complaints, however, include no specific allegations or facts regarding Joyce Brown, NP ("NP Brown"). (R. Docs. 1; 41).

On February 27, 2025, numerous defendants filed a motion to dismiss. (R. Doc. 40). Plaintiff filed no opposition, but instead notified the Court of a change of address and requested that the Court transfer the case to the Eastern District Court of New York. (R. Docs. 43; 44). On August 4, 2025, (i) Plaintiff's motion to transfer was denied, (ii) the Louisiana Department of Health, Eastern Louisiana Mental Health Systems, Tunsha Harris, Richard Bethley, Pamela Scott, Laura Lott, John Roberts III, and Rebekah Gee were dismissed due to Plaintiff's failure to state a claim against them, and (iii) the State of Louisiana, Louisiana Office of Risk Management, Bureau of Protective Services, Paula Jones, Robert Kelly, Chris Braggs, Melvin Clouds, Jon Echols, and Jordan Robinson were dismissed without prejudice for Plaintiff's failure to properly serve them. (R. Doc. 48). Defendants, Turn Key and NP Brown, remained as defendants..

On October 20, 2025, Defendants filed the instant MSJ (R. Doc. 53). Plaintiff failed to file an opposition. Regarding NP Brown, Defendant argues Plaintiff fails to allege—much less show through any evidence—facts showing any of NP Brown's conduct rose to the level of deliberate indifference. Regarding Turn Key, Defendants point out that (i) private prison-management corporations, such as Turn Key, may not be held liable under 42 U.S.C. § 1983 via *respondeat superior* theories and (ii) Plaintiff fails to demonstrate Turn Key had any policy in place that caused Plaintiff's injuries. Defendants also argue Plaintiff did not exhaust his available

3

remedies, as required by the Prison Litigation Reform Act (the "PLRA"). (R. Doc. 53-1). Defendants also argue that Plaintiff's state law claims should be dismissed because Plaintiff failed to obtain an expert, as required by Louisiana medical malpractice law. (*Id.,* at 12).

The Court finds that Plaintiff has failed to properly allege or support his federal claims regarding NP Brown and Turn Key. As Plaintiff's federal claims fail, the Court need not address whether the PLRA applies in this case. *But see Duvall v. Dallas Cnty., Tex.,* No. CIV. A. 305CV2431B, 2006 WL 3487024, at *2 (N.D. Tex. Dec. 1, 2006) ("A number of circuits have held that litigants who bring suits concerning prison life after being released are not subject to § 1997e(a)'s exhaustion requirement.").

This Court does not find that Plaintiff has brought any state law claims. State law and medical malpractice are not mentioned anywhere in the original or amended complaints. (R. Docs. 1; 41).

## II.    Law and Analysis

### A.    Legal Standards

A motion for summary judgment shall be granted when there are no genuine issues as to any material facts and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. When a motion for summary judgment is properly made and supported under Fed. R. Civ. P. 56(c), the opposing party may not rest on the mere allegations of their pleadings, but rather must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(c)(1). The non-movant's evidence is to be believed for the purpose of the motion and all justifiable inferences are to be drawn in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Yet, summary judgment must be entered against a non-movant plaintiff if he or she fails to make an evidentiary showing sufficient to establish the existence of

an element essential to his or her claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Without a showing sufficient to establish the existence of an essential element, there can be "no

genuine issue as to any material fact since a complete failure of proof concerning an essential

element of the nonmoving party's case necessarily renders all facts immaterial." *Id.*, at 323.

**B.    The Undisputed Facts Relevant to the MSJ**

As Plaintiff failed to object to the MSJ, the following facts, sourced from Defendants'

Statement of Uncontested Material Facts and its supporting sealed documents, are undisputed:

- In February of 2022, Plaintiff suffered a retinal detachment in his right eye, and, on April 6, 2022, Plaintiff underwent a surgery where Dr. Breaud placed an Oil Bubble in his right eye. Plaintiff claims the Oil Bubble was scheduled to be removed on November 4, 2022.

- On October 24, 2022, Plaintiff was incarcerated in EBRP. Plaintiff told no medical staff about the Removal Surgery regarding the Oil Bubble until after NP Brown prescribed Plaintiff eye drops for his right eye on April 4, 2023. On April 5, 2023, Plaintiff requested a consultation with Dr. Breaud regarding the Removal Surgery. This was the first time, while imprisoned, that Plaintiff requested an evaluation related to the Oil Bubble.

- On April 6, 2023, Plaintiff was evaluated by an LPN, but Plaintiff only noted back pain. On April 15, 2023, Plaintiff made a request for a follow-up related to the eye issue, and he was seen  by a sick call nurse shortly thereafter. He reported no pain, only bad vision. On April 19, 2023, in-house physician Dr. Michael Day ("Dr. Day") referred Plaintiff to Dr. Breaud. The next day, medical staff contacted Dr. Breaud, and spoke with a nurse who advised the staff to follow up with the Our Lady of the Lake clinic ("OLOL").

- On April 20, 2023, the medical staff left a voicemail with OLOL but were unable to set an appointment that day. Soon an appointment was set for Plaintiff at the University Medical Center of New Orleans ("UMCNO") for July 6, 2023. Until then, medical staff gave him medication and eye drops, and he rarely complained of eye pain or discomfort.

- Plaintiff was seen by UMCNO Ophthalmology on July 6, 2023, and was assessed and treated at the Tulane Medical Center on July 13, 2023. He was then seen and treated by Dr. Day for complaints about eye pressure on July 23, 2023, and August 2, 2023. On August 15, 2023, Plaintiff returned to UMCNO for another assessment, and he was told to follow up with Dr. Day, but he refused to see Dr. Day, instead waiving treatment.

- On August 17, 2023, Plaintiff went to UMCNO Surgery to discuss possible cataract surgery and, on August 24, 2023, returned to UMCNO Ophthalmology for right eye treatment. Medical staff continued to schedule ophthalmology appointments and administer medication to Plaintiff until his release from EBRP on September 4, 2023.

(R. Doc. 53-2; 56).

5

**C.**      **Plaintiff Fails to Show Joyce Brown Acted With Deliberate Indifference**

A prison official, or a nurse for a private prison-management corporation, violates the Eighth Amendment's[2] prohibition of cruel and unusual punishment if he or she shows deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103-06 (1976). The nurse must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety" and "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists[.]" *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). He or she also must draw that inference. *Id*. Failed treatments, negligence, and medical malpractice are insufficient to give rise to a claim of deliberate indifference. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). A prisoner who disagrees with the course of treatment or alleges he or she should have received further treatment also does not raise a claim of deliberate indifference. *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Instead, an inmate must show the nurse denied him treatment, purposefully provided him improper treatment, or ignored his medical complaints. *Id*. A delay in treatment may violate the Eighth Amendment if the delay was the result of the nurse's deliberate indifference and substantial harm, including suffering, occurs during the delay. *Easter v. Powell*, 467 F.3d 459, 464-65 (5th Cir. 2006).

As Plaintiff fails to provide specific allegations regarding NP Brown in his complaints and has failed to respond to the MSJ, Plaintiff has pointed to no facts, or even allegations, showing NP Brown denied him treatment, purposefully provided him with improper treatment, or ignored his medical complaints. (R. Docs. 1; 41). Rather, the record shows otherwise:

- In November of 2022, NP Brown gave Plaintiff an Ensure Plus as he was not satisfied with his meal from the prison that day.

---

[2] "[T]he same definition of deliberate indifference applies under the Fourteenth Amendment." *Cleveland v. Gautreaux*, 198 F. Supp. 3d 717, 742 (M.D. La. 2016).

- In April of 2023, NP Brown treated Plaintiff for a fractured mandible and scheduled a psychiatrist appointment for Plaintiff. She also began prescribing Plaintiff eye drops for his eyes on April 4, 2023.

- In May of 2023, NP Brown managed Plaintiff's medications, scheduled Plaintiff for a blood pressure appointment, and also explained to Plaintiff he would not be getting Ensure because he had been seen eating. The eye drops were continued.

- In June of 2023, NP Brown managed Plaintif's medications, set appointments so that his blood pressure could be monitored, treated Plaintiff's eye with eye drops, and set up an appointment for Plaintiff's discharge planning.

- In July of 2023, NP Brown continued to prescribe Plaintiff eye drops and continued to have Plaintiff's blood pressure monitored by other staff. Further, when Plaintiff noted he wanted his eye pressure assessed, she noted this and explained she did not have the tool to make such a measurement. She noted his eye pressure was checked earlier that month.

- In August of 2023, NP Brown remained involved in the care of Plaintiff's eye, prescribing eye drops. Plaintiff's weekly blood pressure checks were also continued.

(R. Doc. 56). Nothing in the record indicates NP Brown was deliberately indifferent to Plaintiff's serious medical needs, and Plaintiff fails to reveal she ever denied him care, or gave him improper care, following any notice to Turn Key that a Removal Surgery needed to occur.[3] (R. Doc. 56); *see Petzold v. Rostollan*, 946 F.3d 242, 250 (5th Cir. 2019) (citation omitted) ("But, because medical treatment was provided, even if it was negligent, disagreed-with, and based on a perfunctory and inadequate evaluation, it was not denied."). Thus, this Court finds Plaintiff's 42 U.S.C. § 1983 deliberate indifference claims against NP Brown fail on summary judgment.

### D.    Plaintiff's 42 U.S.C. § 1983 Claims Against Turn Key Fail

"The test to determine liability for a private prison-management corporation under [42 U.S.C.] § 1983 is more or less identical to the test employed to determine municipal or local government liability." *Woodward v. Lopinto*, No. 18-4236, 2021 WL 1969446, at *5 (E.D. La. May 17, 2021) (citations omitted); *see West v. Atkins*, 487 U.S. 42, 55 (1988) (finding that a

---

[3] The first time Plaintiff told a Turn Key employee of any need for a Removal Surgery was on April 5, 2023. (R. Docs. 53-2; 56). NP Brown's eye drop prescription started the day before. *Id.* While NP Brown was regularly caring for Plaintiff's eye, an offsite ophthalmology appointment for Plaintiff was already confirmed for July 6, 2023. *Id.*

medical provider under contract with the state is a state actor for the purposes of 42 U.S.C. § 1983 liability). "To establish municipal liability under [42 U.S.C.] § 1983, a plaintiff must show the deprivation of a federally protected right caused by action[s] taken 'pursuant to an official municipal policy.'" (*Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010) (citation omitted). A plaintiff must therefore allege "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Id.* An official policy is:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under [42 U.S.C.] § 1983 unless they execute official policy as above defined.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir.), on reh'g, 739 F.2d 993 (5th Cir. 1984).

Failing to respond to the MSJ, Plaintiff has failed to non-conclusively allege[4] or point to facts revealing that Turn Key has an official policy or custom in place that causes constitutional violations to occur. (R. Docs. 1; 41). Plaintiff has also failed to allege any widespread practice resulting in deliberate indifference to his serious medical needs. Plaintiff only provides facts regarding his own direct experience with a set of Turn Key employees who allegedly ignored his requests but, as "[41 U.S.C. §] 1983 provides for no *respondeat superior* liability[,]" this is not enough to support his 42 U.S.C. § 1983 claims against Turn Key. *Jordan v. Gautreaux*, 593 F.

---

[4] Plaintiff's allegation that "Turn Key Health . . . has a history of substandard care for incarcerated persons and [is] responsible for a host of complained violations[,]" is entirely conclusory as Plaintiff points to no single fact in support of this allegation, either in the complaints or in response to this MSJ. (R. Doc. 41 at 8).

Supp. 3d 330, 353 (M.D. La. 2022) (citations omitted). Further, Plaintiff has provided no proof regarding these experiences; he rests on his bare allegations. When a motion for summary judgment is properly made and supported under Fed. R. Civ. P. 56(c), the opposing party may not rest on the mere allegations of their pleadings, but must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(c)(1). As no policy is evident from the undisputed facts, and Plaintiff has provided no evidence showing otherwise, it is clear Plaintiff's 42 U.S.C. § 1983 claims against Turn Key cannot survive summary judgment.

### E.    Plaintiff has Failed to Prosecute this Case

Plaintiff has not participated in this case—nor has this Court been able to contact him—since he requested a case transfer and an address change to New York on May 13, 2025. (R. Docs. 43; 44; 49; 50; 51; 52; 60). Defendants even stated the following on February 6, 2026:

> To date, Defendants have been unable to obtain participation from Plaintiff in connection with the matter or the preparation of this Pretrial order. Defendants previously filed a Motion for Summary Judgment (R. Doc 53) to which there remains no opposition. . . . On information and belief, the [New York] address provided by Plaintiff was a shelter. Despite Defendants' reasonable efforts, Plaintiff has been unresponsive.

(R. Doc. 57). It is evident Plaintiff does not live at any address he has given this Court, has failed to provide this Court with a new address, and has not been able to pursue his case. Plaintiff's failure to participate in the case is no reason for the Court to deny Defendants' MSJ.

On September 15, 2025, service upon Plaintiff failed for the fourth time due to his incorrect address; no address correction has been made by Plaintiff since and a service attempt as recent as April 10, 2026 has also failed. (R. Docs. 52; 60). Under Local Rule 41, "[t]he failure of an attorney or pro se litigant to keep the Court apprised of an address change *may* be considered cause for dismissal for failure to prosecute, when a notice is returned to a party or the Court for the reason of an incorrect address and no correction is made to the address for a period of thirty

9

days." L.R. 41 (emphasis added). Such dismissals are without prejudice. *Id.* Given the inclusion of the term "may" in this Local Rule, the Court is not obligated to dismiss the entire case *and* Defendants without prejudice, allowing Plaintiff to refile against Defendants, who have rightly argued their case to obtain their own dismissal *with* prejudice. The purpose of Local Rule 41 is to deter Plaintiffs from changing their address without notifying the Court, not to benefit those that do so.

### F.      State law claims

As set forth above, the Court does not find that plaintiff has alleged any valid state law claims. Should the complaint, as amended, be construed as raising any state law claims, it is recommended that the Court decline to exercise supplemental jurisdiction over such claims. See 28 U.S.C. §1367(c).

Based on the foregoing,

**IT IS RECOMMENDED** that the Motion for Summary Judgment (R. Doc. 53) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that **TURN KEY HEALTH CLINIC, LLC,** and **JOYCE BROWN, NP**, be **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER RECOMMENDED** that the Court decline to exercise supplemental jurisdiction over any state law claims and that this matter be **CLOSED**.

Signed in Baton Rouge, Louisiana, on May 20, 2026.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

10